IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THOMAS CLARK, individually and
on behalf of all others similarly situated                                          PLAINTIFF

v.                          Case No. 4:20-cv-00475-KGB

SOUTHWESTERN ENERGY
COMPANY; FLYWHEEL ENERGY
MANAGEMENT, LLC; and FLYWHEEL
ENERGY PRODUCTION, LLC                                                              DEFENDANTS

# ORDER

Plaintiff Thomas Clark brings this action on behalf of himself and all others similarly situated against separate defendant Southwestern Energy Company ("Southwestern") and separate defendants Flywheel Energy Management, LLC ("FEM"), and Flywheel Energy Production, LLC ("FEP"), (collectively "Flywheel") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, *et seq.* Before the Court are Flywheel's motion to dismiss and motion to dismiss plaintiff's amended complaint (Dkt. Nos. 5, 14). Also before the Court are Southwestern's motion to dismiss and motion to dismiss plaintiff's first amended and substituted complaint (Dkt. Nos. 8, 16). Mr. Clark responded in opposition (Dkt. Nos. 17, 18), and defendants replied (Dkt. Nos. 23, 24). For the following reasons, the Court denies defendants' motions to dismiss Mr. Clark's amended complaint (Dkt. Nos. 14, 16). The Court denies as moot defendants' motions to dismiss Mr. Clark's original complaint (Dkt. Nos. 5, 8).

## I.    Procedural Background

On May 5, 2020, Mr. Clark filed a collective action complaint alleging violations of the FLSA against Southwestern and Flywheel (Dkt. No. 1). Defendants moved to dismiss Mr. Clark's original complaint (Dkt. Nos. 5, 8). On July 13, 2020, Mr. Clark filed an amended complaint (Dkt.

No. 10). Mr. Clark alleges that Southwestern and Flywheel are independent oil and natural gas companies (*Id.*, ¶¶ 20, 53). According to Mr. Clark, he worked for Southwestern as an hourly-paid Well Tender/Pumper from approximately June 2014 to November 2017 (*Id.*, ¶ 23). His duties included driving to well sites and monitoring and tending to pumps, performing safety checks on his vehicle before beginning work for the day, and completing paperwork at the end of each day such as entering tickets from well sites and filling out logs (*Id.*, ¶ 25). Mr. Clark alleges that the vehicle safety check took approximately 30 minutes each day to complete, that the end-of-day paperwork took approximately one to two hours to complete, and that he spent approximately one to four hours each day driving to well sites (*Id.*, ¶¶ 26–28). Mr. Clark further alleges that Southwestern neither recorded nor compensated Mr. Clark for the time spent on these activities and expressly directed him not to clock in while performing these activities (*Id.*, ¶¶ 29, 32). According to Mr. Clark, he regularly worked over 40 hours per week but did not receive overtime compensation for some hours worked over 40 per week (*Id.*, ¶¶ 31, 35). Mr. Clark makes these allegations on behalf of himself and other similarly situated employees.

Mr. Clark further alleges that, around December 2018, FEM and/or FEP acquired Southwestern or the portion of Southwestern in which Mr. Clark formerly worked (*Id.*, ¶ 37). Mr. Clark alleges that Southwestern informed FEM and/or FEP of Southwestern's practice of not paying employees pursuant to the requirements of the FLSA and that Flywheel continued the same pay practices as Southwestern (*Id.*, ¶¶ 38, 41). Mr. Clark alleges that similarly situated Flywheel employees performed duties comparable to those he performed as a Well Tender/Pumper but were not compensated for such duties or for overtime hours worked (*Id.*, ¶¶ 56–68). Mr. Clark also alleges that Flywheel directed its employees not to clock in while performing safety checks, driving to their first locations, or completing end-of-day paperwork and that Flywheel neither

recorded the time spent on such activities nor compensated employees for such activities (*Id.*, ¶¶ 62, 65).

Mr. Clark brings this claim for relief for violation of the FLSA as a collective action pursuant to 29 U.S.C. § 216(b) (*Id.*, ¶ 71). Mr. Clark proposes the following class under the FLSA: "All Well Tenders/Pumpers, or comparable positions, employed by Southwestern, FEM and/or FEP in the past three years." (*Id.*, ¶ 72). Mr. Clark alleges that the members of the proposed FLSA class are similarly situated because they were subject to defendants' common policy of requiring Well Tenders/Pumpers or comparable positions to perform vehicle inspections before clocking in; they were subject to defendants' common policy of failing to pay Well Tenders/Pumpers or comparable positions for all hours worked; and they had substantially similar job duties, requirements, and pay provisions (*Id.*, ¶ 75). Mr. Clark asserts that putative class members are entitled to relief in the form of regular wages and overtime premiums for all hours worked over 40 hours in any week, liquidated damages, and attorney's fees and costs (*Id.*, ¶ 71). Mr. Clark thus requests relief individually and collectively under the FLSA.

Flywheel and Southwestern now move to dismiss Mr. Clark's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 14, 16). Flywheel argues in its motion that the Court should dismiss Mr. Clark's FLSA claims against Flywheel because Mr. Clark has not plausibly pleaded successor liability (Dkt. No. 15, at 6). According to Flywheel, Mr. Clark merely recites the elements of successor liability without pleading actual facts (*Id.*, at 8). Flywheel further argues that Mr. Clark has not plausibly pleaded willful conduct and that his claim is therefore barred by the FLSA's two-year statute of limitations (*Id.*, at 9–10). Flywheel finally argues that Mr. Clark cannot represent a collective action against Flywheel because he was never employed by Flywheel and therefore is not similarly situated to Flywheel employees (*Id.*, at 10–12).

Flywheel attaches to its motion to dismiss a Form 8-K for Southwestern Energy Company dated August 30, 2018, filed with the United States Securities and Exchange Commission (Dkt. No. 15-1), and a membership interest purchase agreement by and between Southwestern Energy Company, as seller, and Flywheel Energy Operating, LLC, as buyer, dated August 30, 2018 (Dkt. No. 15-2). Southwestern in its motion also argues that Mr. Clark's claim is barred by the FLSA's two-year statute of limitations because he fails to plead willful conduct and that Mr. Clark cannot represent a collective action against Southwestern (Dkt. No. 16-1, at 3–7).

### II. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914

(8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).

In short, "[a] complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### III.   Analysis

The Court will first address the parties' arguments regarding whether the FLSA's two- or three-year statute of limitations applies. The Court will then address whether Flywheel can be liable as Southwestern's successor and finally whether Mr. Clark adequately pleads a collective action against defendants.

#### A.   Willfulness

Defendants argue that Mr. Clark's action should be dismissed because Mr. Clark has failed to plead willful conduct. An action asserting FLSA violations is generally subject to a two-year limitations period, but if the violation is "willful," a three-year limitations period applies. *See* 29 U.S.C. § 255(a). Mr. Clark initiated this lawsuit on May 5, 2020 (Dkt. No. 1). Mr. Clark alleges in his amended complaint that he worked for Southwestern from approximately June 2014 to November 2017 (Dkt. No. 10, ¶ 24). Mr. Clark further alleges that, upon information and belief,

5

around December 2018, FEM or FEP acquired Southwestern or the portion of Southwestern in which Mr. Clark formerly worked (*Id.*, ¶ 37). Mr. Clark proposes the following class under the FLSA: "All Well Tenders/Pumpers, or comparable positions, employed by Southwestern, FEM and/or FEP in the past three years." (*Id.*, ¶ 72). Thus, if Mr. Clark fails to plead willfulness, the FLSA's two-year statute of limitations likely applies and bars Mr. Clark's claims.

The Supreme Court has defined a "willful" violation of the FLSA as one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir. 2000). The FLSA also requires employers to "make, keep, and preserve" certain records of their employees' wages and hours, among other things. 29 U.S.C. § 211(c). An employer's violations of the FLSA recordkeeping requirements can "serve as corroboration of the employer's willfulness in failing to compensate for overtime." *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10–CV–04175–NKL, 2011 WL 3924920, at *2 (W.D. Mo. Sept. 7, 2011) (citing *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002)). This Court has previously concluded that a plaintiff sufficiently alleged a willful violation of the FLSA where the plaintiff alleged that his employer changed his classification from hourly to salaried without any material change in his duties and with reckless disregard to the consequences or knowledge that the change was unlawful and where the plaintiff alleged that the employer violated the FLSA's recordkeeping provisions. *Buck v. Lindsey Mgmt. Co.*, No. 4:13-cv-000676-KGB, 2014 WL 3446779, at *5 (E.D. Ark. July 15, 2014).

At this stage in the proceedings, the Court rejects defendants' arguments that Mr. Clark fails adequately to allege willful violations of the FLSA. In his amended complaint, Mr. Clark alleges that defendants kept at least some records regarding the employment of Well

6

Tenders/Pumpers (Dkt. No. 10, ¶¶ 24, 57); that defendants did not record, and Mr. Clark and other Well Tenders/Pumpers were not compensated for, certain allegedly compensable activities such as vehicle safety inspections and paperwork (*Id.*, ¶¶ 29–30, 62–63); that defendants expressly directed Mr. Clark and similarly situated employees not to clock in while performing safety checks and driving to their first location or while completing paperwork at the end of the day (*Id.*, ¶¶ 32, 65); that defendants had knowledge of the hours worked by Mr. Clark and all others similarly situated (*Id.*, ¶¶ 33, 66); and that defendants knew or showed reckless disregard for whether their actions violated the FLSA (*Id.*, ¶¶ 36, 69). Accordingly, the Court concludes that Mr. Clark sufficiently alleges willfulness under the FLSA.

### B.     Flywheel's Liability

Flywheel argues that the Court should dismiss Mr. Clark's FLSA claims against Flywheel because Mr. Clark has not plausibly pleaded successor liability (Dkt. No. 15, at 6). According to Flywheel, Mr. Clark merely recites the elements of successor liability without pleading actual facts (*Id.*, at 8).

#### i.     Matters Outside The Pleadings

As an initial matter, this Court must decide whether it will consider two documents attached to Flywheel's motion to dismiss. Flywheel includes a Form 8-K for Southwestern dated August 30, 2018, filed with the United States Securities and Exchange Commission ("SEC") (Dkt. No. 15-1). The Form 8-K reports an agreement between Southwestern and Flywheel Energy Operating, LLC (*Id.*, at 2). Flywheel also includes a membership interest purchase agreement by and between Southwestern, as seller, and Flywheel Energy Operating, LLC, as buyer, dated August 30, 2018 (Dkt. No. 15-2). Flywheel argues that the Court may consider these materials without converting their motion to dismiss into a motion for summary judgment because they are

public filings of which this Court may take judicial notice (Dkt. No. 15, at 2 n.1). Mr. Clark objects to Flywheel's inclusion of these documents (Dkt. No. 17).

Rule 12(d) requires that a motion to dismiss under Rule 12(b)(6) be treated as a motion for summary judgment under Rule 56 if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *see Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (concluding that district court properly treated Rule 12(b)(6) motion as motion for summary judgment because letter, which was not alleged in the complaint, constituted matter outside the pleadings). "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). Documents necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (citing *In re Syntex Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

In his amended complaint, Mr. Clark alleges that "[u]pon information and belief, around December of 2018, FEM and/or FEP acquired Southwestern or the portion of Southwestern in which Plaintiff formerly worked" (Dkt. No. 10, ¶ 37). Mr. Clark makes no allegations regarding Flywheel Energy Operating, LLC, or an August 2018 agreement between Southwestern and Flywheel Energy Operating, LLC. Indeed, on the record before the Court, Flywheel Energy Operating, LLC, is not a party to this lawsuit and is not referenced at all in Mr. Clark's amended complaint. Accordingly, the Court concludes that the Form 8-K and the membership interest purchase agreement which Flywheel attaches to its motion to dismiss are not necessarily embraced by Mr. Clark's complaint and are therefore matters outside the pleadings. The Court also declines

to take judicial notice of these SEC filings regarding an agreement between a defendant and a non-party. Further, counsel for Flywheel in the brief spends more than one page explaining to this Court what these multi-page legal documents are intended to demonstrate regarding this transaction, with no supporting affidavit or sworn testimony to substantiate the explanation.

The Court declines to consider the documents at this time, excludes the documents from its consideration of the pending motions to dismiss under Rule 12(b)(6), and declines to convert the Rule 12(b)(6) motions into motions for summary judgment under Rule 56. Flywheel may file a properly supported motion for judgment on the pleadings or motion for summary judgment, if appropriate in this case.

### ii.     Successor Liability

Ordinarily, when a corporation sells all of its assets to another, the purchasing corporation is not responsible for the seller's liabilities unless the purchaser expressly or impliedly agrees to assume the obligations, the purchaser is a continuation of the selling corporation, or the transaction is entered into so that the seller can escape liability. *See, e.g.*, *Grand Labs., Inc. v. Midcon Labs.*, 32 F.3d 1277, 1281 (8th Cir. 1994). However, federal courts apply a federal common law successorship doctrine to the FLSA that broadens the scope of state-law successor liability. *See Paschal v. Child Dev., Inc.*, No. 4:12-CV-0184 KGB, 2014 WL 55179, at *5 (E.D. Ark. Jan. 7, 2014).

"Successorship liability was originally adopted under the [National Labor Relations Act] to avoid labor unrest and provide some protection for employees against the effects of a sudden change in the employment relationship." *Paschal*, 2014 WL 55179, at *5 (quoting *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995)). The question of successorship in the labor context "requires analysis of the interests of the new employer and the employees and of the policies of

9

the labor laws in light of the facts of each case and the particular legal obligation which is at issue, whether it be the duty to recognize and bargain with the union, the duty to remedy unfair labor practices, the duty to arbitrate, etc." *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 264 n.9 (1974).  The inquiry is fact intensive.  *N.L.R.B. v. Winco Petroleum Co.*, 668 F.2d 973, 975 (8th Cir. 1982); *see Paschal v. Child Development, Inc.*, No. 4:12-cv-00184-BRW, 2012 WL 1660688, at *2 (E.D. Ark. May 11, 2012) (denying motion to dismiss on issue of successor liability and reasoning that discovery would be beneficial to determining the issue).  "Particularly in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate."  *Howard Johnson*, 417 U.S. at 254.  "There is, and can be, no single definition of 'successor' which is applicable in every legal context.  A new employer, in other words, may be a successor for some purposes and not for others."  *Id*. at 262 n.9.

The Eighth Circuit has adopted the nine-factor test for determining successorship stated in *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974).  *See Prince v. Kids Ark Learning Ctr., LLC*, 622 F.3d 992, 995 (8th Cir. 2010).  The nine *MacMillan* factors are:  (1) whether the successor company had notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuation of business operations; (4) whether the new employer uses the same plant; (5) whether the new employer uses the same or substantially the same work force; (6) whether the new employer uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the new employer uses the same machinery, equipment, and methods of production; and (9) whether the new employer

produces the same product. *Id.* (citing *MacMillan*, 503 F.2d at 1086). These factors were subsequently incorporated into FMLA regulations. 29 C.F.R. § 825.107. The *MacMillan* factors can be condensed to only the first three factors—notice, ability of the predecessor to provide relief, and substantial continuity—as the fourth through ninth factors are essentially subfactors for determining substantial continuity. *Paschal*, 2014 WL 55179, at *5.

The *MacMillan* factors "are not in themselves the test for successor liability. . . . The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy." *Prince*, 622 F.3d at 995 (quoting *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 554 (6th Cir. 2006)). "Instead, the [*MacMillan*] factors are simply factors courts have considered when applying the three prong balancing approach, considering the defendant's interests, the plaintiff's interests, and federal policy." *Cobb*, 452 F.3d at 554. Likewise, "all nine factors will not be applicable to each case. Whether a particular factor is relevant depends on the legal obligation at issue in the case." *Id*.

Here, Flywheel argues that Mr. Clark fails to allege facts sufficient to establish successor liability (Dkt. No. 15, at 8–9). Mr. Clark alleges that Flywheel acquired Southwestern or the portion of Southwestern in which Mr. Clark formerly worked around December 2018; that Flywheel had the same business model, employees, managers or supervisors, equipment and facilities, and provided the same services to the same clients as Southwestern; that Southwestern informed Flywheel of its practice of not paying employees in accordance with the FLSA; and that Flywheel continued the same pay practices as Southwestern (Dkt. No. 10, ¶¶ 38–41). At this stage, the Court concludes that Mr. Clark has adequately alleged successor liability.

      **C.    Collective Action**

Defendants argue that Mr. Clark cannot support a collective action because he is not similarly situated to Southwestern and Flywheel employees. The Eighth Circuit has not addressed what a plaintiff who brings a collective action under the FLSA must allege to survive a 12(b)(6) motion on their collective action claims. Some district courts in the Eighth Circuit have concluded that, when a plaintiff has adequately alleged a violation of the FLSA, a motion to dismiss is not the proper vehicle to address the validity of collective action allegations. *See Wandrey v. CJ Prof. Satellites, Inc.*, No. 5:14-CV-05087, 2014 WL 4425799, at *7 (W.D. Ark. Sept. 9, 2014); *Arnold v. DirecTV, Inc.*, 2011 WL 839636, at *7 (E.D. Mo. Mar. 7, 2011). Other courts have concluded that "[w]here a plaintiff brings an FLSA claim for and on behalf of himself . . . and other employees similarly situated, the complaint should indicate who those other employees are, and allege facts that would entitle them to relief." *Murphy v. Labor Source, LLC*, 2020 WL 3633234, at *16 (D. Minn. Mar. 12, 2020) (quoting *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008)); *see Zanders v. Wells Fargo Bank, N.A.*, 55 F. Supp. 3d 1163, 1177–78 (S.D. Iowa 2014) ("Decisions that reason that a complaint asserting an FLSA collective action must first meet the ordinary standards of Rule 8 are more persuasive."). Southwestern argues in its reply brief that *Wandry* is "part of a disfavored line of cases" and that cases like *Murphy* and *Zanders* are more persuasive (Dkt. No. 23, at 3).

The Court need not resolve this issue, to the extent that such an issue exists, based on the factual allegations Mr. Clark includes in his amended complaint in this case. Mr. Clark proposes the following class under the FLSA: "All Well Tenders/Pumpers, or comparable positions, employed by Southwestern, FEM and/or FEP in the past three years." (Dkt. No., ¶ 72). Mr. Clark alleges that the members of the proposed FLSA class are similarly situated because they were

12

subject to defendants' common policy of requiring Well Tenders/Pumpers or comparable positions to perform vehicle inspections before clocking in; they were subject to defendants' common policy of failing to pay Well Tenders/Pumpers or comparable positions for all hours worked; and they had substantially similar job duties, requirements, and pay provisions (*Id.*, ¶ 75). Mr. Clark asserts that putative class members are entitled to relief in the form of regular wages and overtime premiums for all hours worked over forty hours in any week, liquidated damages, and attorney's fees and costs (*Id.*, ¶ 71). Mr. Clark has not yet moved for conditional certification of the proposed collective action. The Court concludes that, regardless of what standard applies to FLSA collective actions at this stage, Mr. Clark gives defendants sufficient notice of the putative collective action, its proposed constituent members, and the ground upon which it rests. Accordingly, the Court rejects at this time defendants' arguments that Mr. Clark fails adequately to allege a collective action. Defendants may challenge the sufficiency of Mr. Clark's putative collective action if and when Mr. Clark moves for conditional certification of a collective action.

Southwestern further argues that Mr. Clark cannot represent a collective action against Southwestern because, according to Southwestern, Mr. Clark never alleged in his complaint that Southwestern was an employer of any of the purported class members (Dkt. No. 16-1, at 6). Southwestern argues that Mr. Clark admits that the purported class members were "'[a]t all relevant times' employees of 'Flywheel'" (*Id.* (quoting Dkt. No. 10, ¶ 97)). Southwestern further argues that Mr. Clark makes clear that Southwestern was Mr. Clark's own employer (*Id.*). Southwestern thus argues that the only reasonable inference to be drawn is that Mr. Clark alleges that Southwestern failed to pay him for his hours worked but that Flywheel failed to pay the similarly situated employees for their hours worked (*Id.*).

Mr. Clark in his collective action claim for relief "repeats and re-alleges all previous paragraphs of this Complaint as though fully set forth herein" (Dkt. No. 10, ¶ 93). Mr. Clark earlier in his complaint alleges that "Southwestern directly hired Well Tenders/Pumpers to work on its behalf," that "Plaintiff and other Well Tenders/Pumpers regularly worked over forty hours per week," and that "Southwestern knew or should have known that Plaintiff and similarly situated employees were working additional hours off-the-clock for which they were not compensated" (*Id.*, ¶¶ 24, 31, 34). The Court therefore rejects Southwestern's argument that Mr. Clark's collective action claims against Southwestern should be dismissed for failure to plead that Southwestern employed similarly situated employees.

### IV.     Motions To Dismiss Original Complaint

Defendants also filed motions to dismiss Mr. Clark's original complaint (Dkt. Nos. 5, 8). The filing of an amended complaint likely renders moot any dispositive motions directed at the original complaint. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (determining that the district court's granting a motion to dismiss an original complaint and then denying as moot a then-pending motion to amend the complaint was "plainly erroneous" and determining that "[i]f anything, [the] motion to amend complaint rendered moot [the] motion to dismiss the original complaint"). Accordingly, the Court denies as moot defendants' motions to dismiss Mr. Clark's original complaint (Dkt. Nos. 5, 8).

### V.      Conclusion

For the foregoing reasons, the Court denies defendants' motions to dismiss Mr. Clark's amended complaint (Dkt. Nos. 14, 16). The Court denies as moot defendants' motions to dismiss Mr. Clark's original complaint (Dkt. Nos. 5, 8).

It is so ordered this 23rd day of February, 2021.

_____
Kristine G. Baker
United States District Judge