**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**THOMAS CLARK, individually and on
behalf of all others similarly situated**                                   **PLAINTIFF**

**vs.**                                       **Case No.: 4:20-cv-00475-KGB**

**SOUTHWESTERN ENERGY
COMPANY; FLYWHEEL ENERGY
MANAGEMENT, LLC; and FLYWHEEL
ENERGY PRODUCTION, LLC**                                       **DEFENDANTS**

**DEFENDANT FLYWHEEL ENERGY MANAGEMENT, LLC
AND DEFENDANT FLYWHEEL ENERGY PRODUCTION, LLC'S
<u>BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, Defendant Flywheel Energy Management, LLC ("<u>FEM</u>") and Defendant Flywheel Energy Production, LLC ("<u>FEP</u>") (FEM and FEP together, the "<u>Flywheel</u>"), hereby submit this brief in support of their Motion for Summary Judgment (Dkt. 38), which requests that the Court to enter summary judgment in favor of Flywheel on Plaintiff's "successor liability" claims under the Fair Labor Standards Act (the "<u>FLSA</u>"), 29 U.S.C. §§ 201 *et seq.*. Because Defendant Southwestern Energy Company ("<u>Southwestern</u>") did not notify Flywheel or its affiliates of Plaintiff's claims, because Southwestern remains capable of satisfying its own liabilities, and because there is no substantial continuity between Southwestern and Flywheel, no reasonable fact-finder could find that Flywheel is Southwestern's "successor" and the Court should enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims. In further support of its Motion for Summary Judgment, Flywheel would show the Court the following.

**Background**

In his First Amended and Substituted Complaint—Collective Action (Dkt. 10) (the "Amended Complaint"), filed July 13, 2020, Plaintiff has brought individual and purportedly collective claims against Southwestern and Flywheel under the FLSA. While Plaintiff has brought claims directly against Southwestern as his former employer, Plaintiff has asserted his claims against Flywheel on the tenuous basis of purported "successor liability." In short, based on an arm's length business transaction between Southwestern and a Flywheel affiliate that occurred approximately one year after Plaintiff's employment with Southwestern ended and that involved assets in a region in which Plaintiff did not work, Plaintiff has argued that the Court should impose liability upon Flywheel for Southwestern's alleged failure to pay Plaintiff (and those allegedly similarly situated) overtime compensation. The Court should reject this shaky argument.

As set out in more detail in Flywheel's Annex of Undisputed Material Facts (the "AUMF"), FEM, FEP, and their affiliates (together, "Flywheel Energy") are—and have always been—completely separate and distinct from Southwestern. Further, Flywheel Energy and Southestern have—and have always had—completely separate and distinct ownership. Though Plaintiff was employed by Southwestern until November 2017, Plaintiff was never employed by Flywheel. Approximately one year after Plaintiff's employment with Southwestern ended, a Flywheel affiliate purchased certain natural gas assets from Southwestern in an entirely separate region from the region in which Plaintiff worked for Southwestern. At the time of the purchase, Southwestern did not notify Flywheel of the possibility of Plaintiff's claims. Following the purchase, Flywheel and its affiliates began to operate the purchased assets under their own policies and procedures and under the supervision of their own management personnel. To the date of this filing, Southwestern remains a viable and operating multi-billion dollar business. In sum, as explained in more detail

2

below, no reasonable fact-finder could find that Flywheel is Southwestern's "successor," and the Court should enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims.[1]

<strong><u>Argument & Authorities</u></strong>

## I.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." In turn, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quotations omitted). "Although [the Court] view[s] the facts and inferences in the light most favorable to … non-moving parties, they have the obligation to come forward with *specific facts* showing that there is a genuine issue for trial." *Id.* (emphasis added).

---

[1] Plaintiff has also moved the Court to conditionally certify a collective action against both Southwestern and Flywheel. In its Response to Plaintiff's Motion for Conditional Certification (Dkt. 34), Flywheel outlined that Plaintiff's request for conditional certification of a collective action against Flywheel should be denied because Plaintiff does not have standing to represent a collective action against Flywheel, because Plaintiff has completely failed to support certification of a collective action against Flywheel with any evidence, because Plaintiff is not similarly situated to any Flywheel employee, and because Plaintiff has failed to establish that any similarly situated Flywheel employees exist and desire to opt into this action. If the Court determines that Plaintiff cannot represent a collective action against Flywheel and that Flywheel is not Southwestern's "successor," the Court should completely dismiss Flywheel from this action.

"[P]arties opposing summary judgment motions may not rest upon the allegations in their pleadings." *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Under this framework, the Court should enter summary judgment in favor of Flywheel.

## II.  Because No Reasonable Fact-Finder Could Find that Flywheel Is Southwestern's "Successor," the Court Should Enter Summary Judgment in Favor of Flywheel on Plaintiff's FLSA Successor-Liability Claims.

In this case, because no reasonable fact-finder could find that Flywheel is Southwestern's "successor," the Court should enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims. In general, an FLSA claim requires an employer-employee relationship. *See* 29 U.S.C. § 216(b). "Those seeking compensation under the [FLSA] bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the [FLSA]." *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011). Yet, in this case, Plaintiff does <u>not</u> contend that he was ever employed by Defendant FEM, Defendant FEP, or any other Flywheel Energy affiliate. Moreover, no reasonable fact-finder could find that Plaintiff—whose employment with Southwestern ended approximately one year before the transaction between Southwestern and FEO—was employed by Defendant FEM, Defendant FEP, or any other Flywheel Energy affiliate in any capacity.

One exception to the FLSA's requirement of an employer-employee relationship is the concept of successor liability. "Successorship liability was originally adopted under the NLRA to avoid labor unrest and provide some protection for employees against the effects of a sudden change in the employment relationship." *Paschal v. Child Dev., Inc.*, No. 4:12-CV-0184 KGB, 2014 WL 55179, at *5 (E.D. Ark. Jan. 7, 2014) (Baker, J.) (quoting *Steinbach v. Hubbard*, 51 F.3d

843, 845 (9th Cir.1995)). "[C]ourts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection." *Id.* (quoting *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir.1995)). "Successor liability is appropriate in the employment-law context *if the imposition of such liability would be equitable*." *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 736 (W.D. Ky. 2019) (quotations omitted) (emphasis added). In other words, successor liability is "an equitable determination" made by the Court. *Prince v. Kids Ark Learning Ctr., LLC*, 622 F.3d 992, 994 (8th Cir. 2010). "In order to determine whether successor liability is equitable in a particular case, the Court must balance (1) the interests of the defendant-employer, (2) the interests of the plaintiff-employee, and (3) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue." *Carter*, 364 F. Supp. 3d at 736 (quotations omitted).

As this Court has noted, the "Eighth Circuit has adopted the nine-factor test for determining successorship stated in *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974)." *Paschal*, 2014 WL 55179, at *6 (citing *Prince v. Kids Ark Learning Ctr.*, LLC, 622 F.3d 992, 995 (8th Cir.2010). Under the *MacMillan* test, the Court analyzes nine factors to determine the ultimate issue of "whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy" *Id.* (quotation omitted). The nine *MacMillan* factors are the following:

1.  Whether the successor company had notice of the [claim];

2.  The ability of the predecessor to provide relief;

3.  Whether there has been a substantial continuation of business operations;

4.  Whether the new employer uses the same plant;

5.  Whether the new employer uses the same or substantially the same work force;

6.   Whether the new employer uses the same or substantially the same supervisory personnel;

7.   Whether the same jobs exist under substantially the same working conditions;

8.   Whether the new employer uses the same machinery, equipment, and methods of production;

9.   Whether the new employer produces the same product.

*Id.* (citation omitted).

"As noted by other courts and [this Court], the *MacMillan* factors can be condensed to only the first three factors—notice, ability of the predecessor to provide relief, and substantial continuity—as the fourth through ninth factors are essentially subfactors for determining substantial continuity." *Id.* (citations omitted). Further, "notice and the predecessor's ability to provide relief are *critical* because it would be inequitable to hold a successor liable when it was unable to take the liability into account in negotiating the acquisition price or when the predecessor was capable of paying and merely attempted to externalize the liability onto another party." *Id.* at *8. (quotations omitted) (emphasis added). "[I]t would be *grossly unfair*, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself … ." *Id.* (quotations omitted) (emphasis added). "[T]he purpose of successorship liability is not to provide windfalls for employees." *Steinbach*, 51 F.3d at 847.

In this case, the undisputed material facts demonstrate that imposing successor liability upon Flywheel would be entirely inequitable. First, Flywheel and its affiliates had no notice of Plaintiff's claims. (AUMF, at ¶ 15). At no point during the negotiation of the MIPA and the sale of the Assets did Southwestern disclose to Flywheel or its affiliates the existence of Plaintiff's

claims. (AUMF, at ¶ 15). To the contrary, in the MIPA, Southwestern represented and warranted to Flywheel that Southwestern was not in violation of any laws and specifically retained any liabilities related to Southwestern's and Southwestern's affiliates' employees. (AUMF, at ¶ 15).

Second, it is clear that Southwestern—Plaintiff's actual employer—is capable of providing Plaintiff relief. Southwestern is a party to this action and remains in business. (AUMF, at ¶ 4). According to its most recent Annual Report, Southwestern holds approximately $5.16 billion in total assets and had operating revenues of approximately $2.3 billion in 2020. (AUMF, at ¶ 4). Additionally, as of its most recent Annual Report, Southwestern had approximately 900 employees. (AUMF, at ¶ 4). While Southwestern posted a loss for calendar year 2020, it posted annual net income of $891 million for the calendar year 2019 and annual net income of $535 million for the calendar year 2018, it has not issued any going concern warnings, and its stock price continues to trend upwards. (AUMF, at ¶ 4). In sum, there is simply no reason to believe that Southwestern cannot satisfy its own liability, if any, for the claims alleged in Plaintiff's Amended Complaint.

Finally, there is no substantial continuity between Southwestern and Flywheel. Southwestern and Flywheel Energy are totally separate companies and their ownership is entirely distinct. (AUMF, at ¶¶ 1–5). Southwestern is a publicly held company with its principal offices in the Houson, Texas metropolitan area. (AUMF, at ¶ 4). Flywheel Energy is a privately held, private-equity-fund owned company with its principal offices in Oklahoma City, Oklahoma. (AUMF, at ¶ 2). Flywheel Energy and Southwestern have never shared management or operations. (AUMF, at ¶ 5). Flywheel Energy and Southwestern do not jointly operate any assets, and they do not jointly employ any individuals. (AUMF, at ¶ 5).

With respect to the region in which Plaintiff actually worked, there is no continuity between Southwestern and Flywheel whatsoever. While Plaintiff worked for Southwestern in West Virginia, Flywheel Energy purchased Southwestern's Fayetteville Shale assets (i.e., the Assets), which are located in Arkansas, and Flywheel Energy does not operate in West Virginia. (AUMF, at ¶¶ 3, 8). Additionally, even with respect to the Assets, there is no *substantial* continuity between Southwestern and Flywheel. While Flywheel employed *some* of the same individuals to operate the Assets to produce and process natural gas, these individuals became subject to Flywheel and its affiliates' policies and procedures and to the supervision of Flywheel and its affiliates' management personnel. (AUMF, at ¶¶ 9–11). Flywheel also meaningfully changed the working conditions under which these individuals operated the Assets. (AUMF, at ¶¶ 12–13). For example, whereas Southwestern segregated its employees as "upstream," "midstream," and "instrumentation and electronics" employees, Flywheel cross-trained its employees to work on all task within their assigned areas or "regional business units." (AUMF, at ¶ 13). Flywheel also completely reconfigured the SCADA system that its employees used to interface with and to control wellsite and compression equipment. (AUMF, at ¶ 12). For any or all of these reasons, it would be inequitable to hold Flywheel liable as a successor for Southwestern's alleged acts.

In similar circumstances, courts have declined to impose successor liability. For example, in *Wheeler v. Snyder Buick, Inc.*, the Seventh Circuit, applying the *MacMillan* test in the Title VII context, upheld a district court's refusal to impose successor liability where, at the time of trial, the predecessor "remained a viable corporate entity with a net value of approximately $196,000" and, at the time of the relevant transaction, the purported successor "had no notice or knowledge

of [the plaintiff's] claim against [the successor]." 794 F.2d 1228, 1231 (7th Cir. 1986).[2] The Seventh Circuit explained its reasoning for its holding as follows:

> [I]n the present case, in which the absence of any timely actual knowledge on the part of the successor is so clear, in which substantial, while not complete, relief from the predecessor is available to the victim, and in which the ownership of the predecessor and of the successor is totally distinct, [the court] refrain[s] from subjecting the doctrine of successor liability to judicial surgery on the scale which would be necessary to permit [the plaintiff] to obtain relief from [the purported successor]."

*Id.* at 1237. Notably, the Seventh Circuit reached its holding despite fact that "[t]here [was] a very considerable continuity … [between the predecessor and the purported successor] with the major exception that the identity of the ownership [was] totally different." *Id.* at 1236–37.

Similarly, in *Dominguez v. Hotel, Motel, Restaurant & Miscellaneous Bartenders Union, Local No. 64*, the Eighth Circuit, applying the *MacMillan* test in the Title VII context, upheld the trial court's refusal to impose successor liability upon a purported successor that had no notice of the plaintiff's claims. 674 F.2d 732, 733 (8th Cir. 1982). In *Dominguez* the Eighth Circuit noted that "[a]lthough there was substantial identity of business operations … , it is clear that at the time [the purported successor] acquired and began operation of the [purchased asset], it had no direct or indirect knowledge of [the plaintiff's] allegations … ." *Id.* On this basis, the Eighth Circuit upheld the district court's refusal to impose successor liability. *Id.*

This Court and numerous others have applied similar reasoning as the courts in *Wheeler* and *Dominguez* to refuse to extend successor liability. *See, e.g.*, *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996) (holding that, where the predecessor was still a viable, operating business, "it would be unjust to impose liability on [the purported successor] for the mere purpose

---

[2] This Court has cited *Wheeler* with approval in the context of determining successor liability under the FLSA. *Paschal*, 2014 WL 55179, at *6, *8.

of enhancing [the plaintiff's] ability to collect a money judgment"); *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 96 (S.D.N.Y. 2017) (granting partial summary judgment in favor of purported successor on successor liability issue where purported successor had no notice of FLSA claims and predecessor was able to provide relief); *Paschal*, 2014 WL 55179, at *10 (granting summary judgment in favor of purported successor on issue of successor liability in part on the basis of "deficient notice" of plaintiffs' FLSA claims). Further, as set out above, the undisputed facts in this case even more strongly favor denial of successor liability. Therefore, because no reasonable fact-finder could find that Flywheel is Southwestern's "successor," the Court should enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims.

## Conclusion & Prayer

In this case, there is no dispute that Plaintiff was employed by Southwestern until November 2017 and that Plaintiff was never employed by Flywheel. Approximately one year after Plaintiff's employment with Southwestern ended, a Flywheel affiliate purchased certain natural gas assets from Southwestern in an entirely separate region from the region in which Plaintiff worked for Southwestern. At the time of the purchase, Southwestern did not notify Flywheel of the possibility of Plaintiff's claims. Southwestern and Flywheel Energy are totally separate and distinct companies, with totally separate and distinct ownership. To the date of this filing, Southwestern remains a viable and operating multi-billion dollar business. Moreover, Flywheel and its affiliates operate the purchased assets under their own policies and procedures and under the supervision of their own management personnel. Under these facts, it is clear that—at least with respect to Flywheel—Plaintiff's Amended Complaint is nothing more than an attempt to drum up litigation. And, on the standards set out above, the Court should hold that no reasonable fact-

finder could find that Flywheel is Southwestern's "successor" and enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims.

WHEREFORE, premises considered, Flywheel respectfully requests that the Court enter summary judgment in favor of Flywheel on Plaintiff's FLSA successor-liability claims and provide such other and further relief that Court considers appropriate.

DATED: May 11, 2021.                    Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART P.C.

**Victor F. Albert**
OK Bar No. 12069
**Brandon D. Kemp**
AR Bar No. 2021023
The Heritage Building
621 N. Robinson Avenue, Suite 400
Oklahoma City, OK  73102
Telephone:  405.546.3774
Facsimile:  405.546.3775
Email: victor.albert@ogletree.com
         brandon.kemp@ogletree.com

**M. Kimberly Hodges**
AR Bar No. 2019018
International Place Tower II
6410 Poplar Avenue, Suite 300
Memphis, TN  38119
Telephone:  901.767.6160
Email: kim.hodges@ogletreedeakins.com

*Attorneys for Defendants Flywheel Energy*
*Management, LLC and Flywheel Energy*
*Production, LLC*