IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THOMAS CLARK, individually and
on behalf of all others similarly situated                                                    PLAINTIFF

v.                              Case No. 4:20-cv-00475-KGB

SOUTHWESTERN ENERGY
COMPANY; FLYWHEEL ENERGY
MANAGEMENT, LLC; and FLYWHEEL
ENERGY PRODUCTION, LLC                                                                       DEFENDANTS

# ORDER

Plaintiff Thomas Clark brings this proposed collective action against separate defendant Southwestern Energy Company ("Southwestern") and separate defendants Flywheel Energy Management, LLC ("FEM") and Flywheel Energy Production, LLC ("FEP") (collectively "Flywheel") alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, *et seq.* (Dkt. No. 10).

Before the Court are Mr. Clark's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28) and Flywheel's motion for summary judgment (Dkt. No. 38). For the following reasons, the Court grants, in part, and denies, in part, Mr. Clark's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28) and grants Flywheel's motion for summary judgment (Dkt. No. 38).

## I.     Factual And Procedural History

On May 5, 2020, Mr. Clark filed a collective action complaint against Southwestern and Flywheel alleging violations of the FLSA and Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq.* (Dkt. No. 1). Southwestern and Flywheel moved to dismiss Mr.

Clark's original complaint (Dkt. Nos. 5, 8). Mr. Clark filed an amended complaint on July 13, 2021, which voluntarily dismissed his claims arising under the AMWA (Dkt. No. 10, ¶ 1). Southwestern and Flywheel moved to dismiss Mr. Clark's amended complaint (Dkt. Nos. 14, 16). The Court denied Southwestern and Flywheel's motions to dismiss Mr. Clark's amended complaint and denied as moot Southwestern and Flywheel's motions to dismiss Mr. Clark's original complaint (Dkt. No. 27).

In his amended complaint, Mr. Clark alleges that Southwestern and Flywheel are independent oil and natural gas companies (Dkt. No. 10, ¶¶ 20, 53). According to Mr. Clark, he worked for Southwestern as an hourly-paid Well Tender/Pumper from approximately June 2014 to November 2017 (*Id.*, ¶ 23). His duties included driving to well sites and monitoring and tending to pumps, performing safety checks on his vehicle before beginning work for the day, and completing paperwork at the end of each day such as entering tickets from well sites and filling out logs (*Id.*, ¶ 25). Mr. Clark alleges that the vehicle safety check took approximately 30 minutes each day to complete, that the end-of-day paperwork took approximately one to two hours to complete, and that he spent approximately one to four hours each day driving to well sites (*Id.*, ¶¶ 26–28). Mr. Clark alleges that Southwestern neither recorded nor compensated Mr. Clark for the time spent on these activities and expressly directed him not to clock in while performing these activities (*Id.*, ¶¶ 29, 32). According to Mr. Clark, he regularly worked over 40 hours per week but did not receive overtime compensation for some hours worked over 40 per week (*Id.*, ¶¶ 31, 35).

Mr. Clark further alleges that, around December 2018, Flywheel acquired Southwestern or the portion of Southwestern in which Mr. Clark formerly worked (*Id.*, ¶ 37). Mr. Clark alleges that Southwestern informed Flywheel of Southwestern's practice of not paying employees

pursuant to the requirements of the FLSA and that Flywheel continued the same pay practices as Southwestern (*Id.*, ¶¶ 39, 41). Mr. Clark alleges that similarly situated Flywheel employees performed duties comparable to those he performed as a Well Tender/Pumper but were not compensated for such duties or for overtime hours worked (*Id.*, ¶¶ 56–68). Additionally, Mr. Clark alleges that Flywheel directed its employees not to clock in while performing safety checks, driving to their first locations, or completing end-of-day paperwork, and that Flywheel neither recorded the time spent on such activities nor compensated employees for such activities (*Id.*, ¶¶ 62, 65).

Mr. Clark brings this proposed collective action against Southwestern and Flywheel under the FLSA for unpaid wages (*Id.*, ¶ 71). He proposes the following class under the FLSA: "All Well Tenders/Pumpers, or comparable positions, employed by Southwestern, FEM and/or FEP in the past three years." (*Id.*, ¶ 72). Mr. Clark alleges that the members of the proposed FLSA class are similarly situated because they were subject to defendants' common policy of requiring Well Tenders/Pumpers or comparable positions to perform vehicle inspections before clocking in; they were subject to defendants' common policy of failing to pay Well Tenders/Pumpers or comparable positions for all hours worked; and they had substantially similar job duties, requirements, and pay provisions (*Id.*, ¶ 75). Mr. Clark asserts that putative class members are entitled to relief in the form of regular wages and overtime premiums for all hours worked over 40 hours in any week, liquidated damages, and attorney's fees and costs (*Id.*, ¶ 71). Mr. Clark thus requests relief individually and collectively under the FLSA.

II.     **Mr. Clark's Motion for Conditional Certification**

On March 4, 2021, Mr. Clark filed a motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28). Southwestern and

Flywheel responded in opposition to the motion, (Dkt. Nos. 32, 34), Mr. Clark replied (Dkt. No. 35), and Southwestern and Flywheel filed sur-replies (Dkt. Nos. 44, 45).[1]

For the reasons that follow, the Court grants, in part, and denies, in part, Mr. Clark's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28).

### A.     Governing Law

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

District courts in the Eighth Circuit, including this one, utilize a two-step approach to determine whether certification of a collective action is appropriate. *See*, *e.g.*, *McChesney v. Holtger Bros.*, No. 4:17-CV-824-KGB, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, No. 4:12-CV-244-KGB, 2013 WL 4028523, at *1 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-CV-843-KGB, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012). Under this approach, a district court first determines whether the putative collective action members are similarly situated (*i.e.*, whether they were subject to a common employment policy or plan), and then, at the conclusion of discovery, the district court provides an opportunity for the defendant to move to decertify the collective action, pointing to a more

---

[1] Although Flywheel objects to Mr. Clark's motion for conditional certification, for reasons explained in this Order, the Court grants Flywheel's motion for summary judgment dismissing Flywheel as a defendant from this action (Dkt. No. 38).

developed record to support its contention that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs. *See Smith v. Frac Tech Servs., Ltd.*, No. 4:09CV000679JLH, 2009 WL 4251017, at *1 (E.D. Ark. Nov. 24, 2009).

"To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)). Plaintiffs' burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated." *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)). Still, "'more than mere allegations' are required" for plaintiffs to carry their burden. *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing *Rappaport v. Embarq Mgmt. Co.*, No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)). Factors to be considered include: (1) whether plaintiffs all held the same job titles; (2) whether plaintiffs worked in different geographical locations; (3) the extent to which the claimed wage-and-hour violations occurred during different time periods and by different decision makers; and (4) whether plaintiffs all alleged similar, though not identical, wage-and-hour violations. *See McChesney*, 2019 WL 118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001)). "The Court does not need to determine whether class members are *actually* similarly situated until the

'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., L.L.C.*, No. 1:14CV00026 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., L.L.C.*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010)). At this stage, the district court also does not "make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (quoting *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014)).

In its opposition to Mr. Clark's motion, Southwestern urges the Court to depart from longstanding Eastern District of Arkansas caselaw and adopt a new inquiry set forth in a recent Fifth Circuit opinion, *Swales v. KLLM Transport Services., L.L.C.*, 985 F.3d 430 (5th Cir. 2021) (Dkt. No. 33, at 10, 12-16). *Swales* rejected the two-stage certification inquiry and advised district courts to "rigorously enforce" the similarity requirement at the outset of the litigation. 985 F.3d at 443. Southwestern has not presented any persuasive reason why this Court should deviate from the widely used two-stage approach. The Court declines to apply *Swales*, as have other district courts in the Eighth Circuit. *See, e.g., Murphy v. Labor Source, L.L.C.*, Case No. 19-cv-1929, 2022 WL 378142, at *11 n.4 (D. Minn. Feb. 8, 2022); *Rodriguez v. Cutchall*, Case No. 4:20-CV-3106, 2021 WL 5911322, at *2 (D. Neb. Nov. 16, 2021); *McCoy v. Elkhart Prods. Corp.*, Case No. 5:20-CV-05176, 2021 WL 510626, at *2 (W.D. Ark. Feb. 11, 2021).

  **B.**  **Discussion**

    **1.**  **Nationwide Class**

Based upon language in his proposed notice, Mr. Clark seeks conditional certification for the following collective: All Well Tender Pumpers employed by Southwestern and Flywheel since

May 5, 2017 (Dkt. No. 28-1, at 1).  In support of the instant motion, Mr. Clark offers only his own declaration (Dkt. No. 28-7).

Mr. Clark states that he was employed as an hourly-paid Well Tender Pumper by Southwestern from approximately June 2014 to November 2017 (*Id.*, ¶ 4).  According to Mr. Clark, defendants employ Well Tender Pumpers to drive to well sites and monitor and tend to pumps (*Id.*, ¶ 5).  Mr. Clark states that defendants required him and other Well Tender Pumpers to perform the following additional duties:  (1) pre-drive vehicle safety checks before driving to the well site each morning, which included walking around the truck, checking all lights and wipers, checking the tire pressure, checking that equipment was properly secured to the truck, and checking inside the truck to ensure no tools were loose and that boxes were locked; and (2) end-of-the-day paperwork after driving home from the well site each evening, which included entering tickets from the well site, and filling out well site logs and phone logs (*Id.*, ¶¶ 5–10).  Mr. Clark estimates that the pre-drive vehicle safety check took approximately 30 minutes each morning to complete, that end-of-day paperwork took approximately one to two hours to complete, and that depending on the well site location he spent approximately one to four hours each day driving to well sites  (*Id.*, ¶¶ 7, 9, 11).

Mr. Clark states that defendants paid him and other Well Tender Pumpers hourly wages, including an overtime rate of one-and-a-half times their regular hourly rate for hours over 40 per week (*Id.*, ¶¶ 5, 12–13).  However, he states that defendants only paid him and other Well Tender Pumpers for the hours spent working at the well site and not for the time spent performing pre-drive vehicle safety checks in the mornings, completing paperwork in the evenings, or driving to and from the well site (*Id.*, ¶¶ 13, 15).  Mr. Clark states that defendants told him not to clock in while performing pre-drive vehicle safety checks, driving to his first location, or while completing

paperwork at the end of the day, and that it was company policy not to pay Well Tender Pumpers for that time (*Id.*, ¶¶ 14–15). He states that he typically worked a minimum of 60 hours per week, and that other Well Tender Pumpers worked similar hours (*Id.*, ¶¶ 16–17). Mr. Clark estimates that there are at least 20 other individuals who work or who have worked as Well Tender Pumpers for defendants since May 5, 2017, and would be interested in joining this action (*Id.*, ¶¶ 18–19).

Southwestern contends that conditional certification is inappropriate for multiple reasons (Dkt. Nos. 32, 33). Southwestern argues that Mr. Clark's declaration is insufficient to support certification of a nationwide class because Mr. Clark only worked in West Virginia and because the putative class would consist of time periods post-dating Mr. Clark's employment with Southwestern (Dkt. No. 33, at 6-11). Southwestern further argues that Mr. Clark cannot demonstrate that other aggrieved individuals exist or would want to joint this lawsuit (*Id.*, at 17-21).

Southwestern puts information before the Court to confirm that Mr. Clark, for all of 2017, worked only in Southwestern's West Virginia business unit and reported up through Southwestern's Jane Lew field office in West Virginia (Dkt. No. 33-1). In other words, Mr. Clark seeks to certify a nationwide class with only his affidavit, when he only worked in one location during the actionable period, and when he fails to acknowledge or address these limitations in his affidavit (Dkt. No. 28-7).

To support his claims, Mr. Clark states in his affidavit that "Defendant told me not to clock in," and that "Defendant told me that it was company policy not to pay Well Tender Pumpers for this time." (Dkt. No. 28-7, ¶¶ 14-15). As Southwestern observes, Mr. Clark "does not identify: (a) the alleged speakers of this purported statement; (b) when the purported statement was made;

8

(c) what geographic location(s) this purported statement applied to; or (d) any other corroborating information" (Dkt. No. 33, at 14). This Court agrees.

Further, Mr. Clark claims that he knows that Southwestern did not pay other Well Tender Pumpers for the time they spent performing the tasks he describes "because [he] spoke with other Well Tender Pumpers" about pay and because "Defendant told me that it was company policy not to pay Well Tender Pumpers for this time." (Dkt. No. 28-7, ¶ 15). He makes similarly thin allegations regarding the number of hours worked and his purported knowledge of what other employees worked (*Id.*, ¶¶ 16-17). He does not identify with whom he spoke, where those other employees were located, when these purported conversations took place, or provide any other details about these conversations. Moreover, in his affidavit, Mr. Clark makes clear that he did not go into an office and did not regularly work alongside any other Well Tender Pumpers. Mr. Clark admits that he routinely drove directly from his home to the individual well sites he supported (Dkt. No. 28-7, ¶ 10). He also admits to driving directly home routinely at the end of his workday (*Id.*, ¶ 8).

The Court notes that district courts have held that, at the notice stage, a plaintiff is not required to provide evidence showing a defendant's alleged illegal practice at every location or that plaintiffs are identically situated to putative class members in all respects. *Burch v. Qwest Communications International, Inc.*, 500 F. Supp.2d 1181, 1187 (D. Minn. 2007). However, other courts, including district courts in the Eighth Circuit, have found evidence such as that offered by Mr. Clark insufficient at the notice stage, especially when the request is to certify a nationwide class.

*McClendon v. Schlumberger Technology Corporation* involved a purported class of oil and gas well service workers. In *McClendon*, the plaintiff, a field technician at defendant oil and gas

9

servicing company, proposed a nationwide class consisting of "[a]ll Senior Field Technicians and Expert Field Technicians employed by Defendant at any time since December 9, 2012." Case No. 4:15CV00752 JLH, 2016 WL 3911897, at *1 (W.D. Ark. July 15, 2016). The plaintiff supported his motion for conditional class certification with his own affidavit based on his personal knowledge working at well sites primarily in Arkansas, but some in Oklahoma, Texas, and Louisiana. *Id.*, at *3. The court declined to certify the proposed class and found that, although a plaintiff "is not required to provide evidence showing [defendant's] unlawful practices at each and every one of its locations[,] . . . he must provide some evidence that [ ] employees outside of Arkansas, Oklahoma, Texas, and Louisiana are similarly situated to him." *Id*. The court pointed out that the plaintiff failed to specify how many times he worked in those states, at what locations, over what period of time, and what he saw others doing. *Id.*, at *6. The court determined that plaintiff's affidavit did not make the required showing that other employees outside of plaintiff's geographic region were similarly situated and that the affidavit was insufficient to meet even the lenient burden for conditional certification. *Id*.

Similarly, in *Mathis v. Stuart Petroleum Testers*, the court denied conditional certification for a proposed class of oil and gas well employees, taking issue in particular with the plaintiff's broad proposed class definition that included "former and current Pump Supervisors and/or Field Supervisors (or similar positions)." Case No. 5:16-CV-094-RP, 2016 WL 4533271, at *3 (W.D. Tex. Aug. 29, 2016). The court reasoned that, in determining whether potential plaintiffs are similarly situated, the primary issue is whether they performed the same basic tasks and were subject to the same pay decisions, policies, or practices. *Id.,* at 2. The plaintiff described his job duties as "maintaining and operating the equipment used at the oilfield well sites." *Id.* The *Mathis* court noted that, if it were to evaluate which employees are in a "similar position" based on the

plaintiff's description of his job duties, the resulting class would inevitably include workers who were not similarly situated to the plaintiff. *Id.*, at *3.

The Court is reluctant to certify a nationwide class with only one affidavit that includes cursory and vague allegations like Mr. Clark's affidavit does. *See Kafka v. Melting Pot Restaurants, Inc.*, No. 4:17-CV-00683-HFS, 2019 WL 9465820, at *6 (W.D. Mo. Apr. 30, 2019) (declining to certify nationwide class); *Wacker v. Personal Touch Home Care, Inc.*, 2008 WL 4838146 (E.D. Mo. Nov. 6, 2008) (declining to certify nationwide 1000-person class based one affidavit from a regional manager, distinguishing "cases where conditional certification was granted on the basis of one or two affidavits, but in those cases either the limited affidavits were from plaintiffs with actual knowledge of the facts, or they involved smaller putative classes."); *West v. Border Foods, Inc.*, 2006 WL 1892527 (D. Minn. July 10, 2006) (declining to certify widespread class based on six statements out of a potential class of 240 employees).

That reluctance is heightened here, where the record demonstrates insufficient evidence to conclude that Mr. Clark is similarly situated to the rest of the proposed class. In this way, the present case is similar to others in which conditional certification was denied. *See, e.g., Settles v. General Elec.*, Case No. 12-00602-CV-W-BP, 2013 WL 12143084, at *5 (W.D. Mo. 2013) (no showing of national policy, and the plaintiffs' "affidavits only directly implicate the areas in which the declarants actually worked"); *Wacker v. Personal Touch Home Care, Inc.*, Case No. 4:08cv93 CDP, 2008 WL 4838146, at *1 (E.D. Mo. Nov. 6, 2008) (plaintiffs made no showing of a national policy, and "the former employee who signed plaintiffs' affidavit ha[d] no personal knowledge of what goes on at other offices around the country"); *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226,

11

1231 (W.D. Mo. 2007) (plaintiffs could only describe duties of other employees with whom they worked, which was deemed insufficient to justify nationwide class).

After reviewing the parties' filings and the declarations, the Court finds that Mr. Clark has not met his modest burden of demonstrating that he and the proposed class members are similarly situated. Mr. Clark has not made a sufficient showing that the putative nationwide class performs or operates under similar policies and practices. Accordingly, the Court declines to certify this case as a collective action on the terms initially requested by Mr. Clark.

### 2. West Virginia Class

In the alternative, Southwestern addresses the possibility of the Court conditionally certifying a class limited to Field Operators[2] in West Virginia in the three-year period immediately prior to the Court's Order on conditional certification (Dkt. No. 33, at 21-30). Mr. Clark seeks this as alternative relief in his reply, but he requests that the timing be extended back further than that proposed by Southwestern (Dkt. Nos. 28, 35). Given the parties' positions, the Court grants conditional certification to: Field Operators who worked in West Virginia, in the three-year period preceding the filing of the complaint. In this action, Mr. Clark filed his complaint on May 5, 2020 (Dkt. No. 1), so the time period is through May 5, 2017. The Court has studied the parties' filings and the cases cited, including this Court's prior decisions. The Court acknowledges the arguments Southwestern makes with respect to the date of this Court's Order, but the Court rejects those arguments here.

### C. Notice

Mr. Clark requests that the Court ratify the following notice process as it pertains to potential opt-in plaintiffs: Mr. Clark would send notice to potential opt-in plaintiffs *via* the United

---

[2] According to Southwestern, Mr. Clark worked as a "Field Operator 1," which Mr. Clark refers to in his declaration as a "Well Tender/Pumper" (Dkt. Nos. 33, at 8, 28-7, ¶ 4).

States Postal Service and e-mail, along with a consent to join collective action, and the Court would set a 90-day opt-in period. Mr. Clark would also distribute a second notice *via* U.S. Mail to potential opt-in plaintiffs who do not respond within 30 days after the opt-in period begins (Dkt. No. 28, at 4). Finally, Mr. Clark asks that the Court direct Southwestern to provide his counsel with a list, in electronic importable format, of the names and contact information, including any aliases or alternative names, last known mailing addresses, last known telephone numbers, and all known e-mail addresses, including personal and company-sponsored, for the potential opt-in plaintiffs no later than seven days after the proposed classes are conditionally certified and the proposed notice and opt-in consent forms are approved (Dkt. No. 28, at 4).

This Court, as well as the attorneys who practice before it, "have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991). The Court, however, has routinely ordered that notice be sent *via* regular U.S. Mail *and* e-mail to all potential opt-in plaintiffs in FLSA cases. *See*, *e.g.*, *Bonds v. Langston Companies, Inc.*, No. 3:18-CV-00189-KGB, 2019 WL 4673569, at *4 (E.D. Ark. Sept. 24, 2019); *Hicks v. Lindsey Mgmt. Co.*, No. 3:18-CV-00133-KGB, 2019 WL 542973, at *4 (E.D. Ark. Feb. 11, 2019); *McChesney*, 2019 WL 118408, at *6. Besides being common practice, distributing notice *via* direct mail and e-mail "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (approving notice *via* regular mail, e-mail, and text messaging to putative class members, reasoning that "[t]his has become a much more mobile society with one's email address and cell

phone number serving as the most consistent and reliable method of communication"). To that end, the Court will allow Mr. Clark to provide potential opt-in plaintiffs with notice *via* U.S. Mail and e-mail. Mr. Clark may send one written notice and consent-to-join form to the potential opt-in plaintiffs *via* U.S. Mail and e-mail, as well as one follow-up notice *via* U.S. Mail to potential opt-in plaintiffs who do not respond within 30 days of sending notice.

Southwestern lodges several objections to Mr. Clark's proposed notice (Dkt. No. 33). Having considered the parties' filings and cases cited by the parties, the Court rules as follows.

Southwestern requests 30 days to gather the relevant contact information, as opposed to Mr. Clark's request that he receive the information in seven days (Dkt. No. 33, at 25). Mr. Clark requests that Southwestern be held to a shorter timetable to produce the information and that the Court toll the statute of limitations for the same amount of time as Southwestern is given to produce the information. The Court grants Southwestern's request for a 30-day period in which to provide the relevant contact information and declines to rule at this time on tolling of the statute of limitations. The parties may raise tolling arguments at a later point in this litigation; the Court makes no determination on tolling.

Southwestern requests that the Court deny the requirement that it post notice in a conspicuous location due to the geographically disparate field locations in which the putative class works (Dkt. No. 33, at 25). The Court grants Southwestern's objection to this request and denies without prejudice Mr. Clark's request that Southwestern be required to post notice in a conspicuous location.

Southwestern requests that the Court deny the requirement that it provide telephone numbers to Mr. Clark (Dkt. No. 33, at 25-26). The Court grants Southwestern's objection and will

not require Southwestern to provide telephone numbers to Mr. Clark, although Southwestern is required to provide last known contact information including address and email address.

Southwestern objects to language in the Notice paragraph 1, which is titled "Time Sensitive," and requests that the Court direct Mr. Clark to amend that language to state:

> Because the right to claim unpaid wages expires after two years, or three years in the case of a willful overtime violation, your right to unpaid wages may depend on the date on which you return the enclosed consent form.

(Dkt. No. 33, at 26). *See Smart v. City of Hughes, Arkansas*, No. 2:19-CV-00047-KGB, 2021 WL 500713, at *6 (E.D. Ark. Feb. 10, 2021). The Court grants Southwestern's request and directs Mr. Clark to revise the Notice consistent with the terms of this Order.

Southwestern objects to language in the Notice paragraph 2, titled "Introduction," and requests the following:

> The purpose of this notice is to inform you of a pending collective action lawsuit in which you may be a member as a Plaintiff, to advise you of how your rights may be affected in this suit; and to instruct you on the procedure for participating in this suit.

(Dkt. No. 33, at 27). The Court grants this request. *See Smart*, 2021 WL 500713, at *6.

Southwestern objects to paragraphs 4 and 6 of the Notice as well as to the class definition with respect to the definition of the class. These portions of the Notice proposed by Mr. Clark should be revised consistent with the terms of this Order.

Southwestern further objects to paragraph 6 of the Notice to make clear that members of the putative class may not be entitled to recovery merely because they were employed by Southwestern (Dkt. No. 33, at 27). The Court grants Southwest's request and directs Mr. Clark to insert the word "not" in paragraph 6 of the Notice immediately before the phrase "be entitled to recovery" in the first sentence of the second section of paragraph 6 of the Notice (Dkt. No. 33, at 27-28). *See Smart*, 2021 WL 500713 at *7.

Southwestern objects to paragraph 10 of the Notice because it improperly suggests that Southwestern has or will retaliate against the putative class (Dkt. No. 33, at 28). The Court grants Southwestern's request and directs Mr. Clark to add the following sentence to the anti-retaliation provision that currently is included in the proposed Notice: "The case does not involve claims or allegations that Southwestern has retaliated against former or current employees" or comparable language agreeable to the parties in this case. *See Adkinson v. Tiger Eye Pizza, L.L.C.*, No. 4:19-cv-4007, 2019 WL 5213957, at *9 (W.D. Ark. Oct. 16, 2019).

Southwestern objects to paragraph 11 of the Notice and requests its removal because there is no factual basis to assume that members of the putative class have entered into severance agreements making the paragraph unnecessary. *See Turner v. Concentriz Servs., Inc.*, No. 1:18-cv-1072, 2020 WL 544705, at *7 (W.D. Ark. Feb. 3, 2020). The Court grants the objection and directs Mr. Clark to remove paragraph 11 of the proposed Notice.

Southwestern objects to the sending of a reminder notice or, in the alternative, requests that the Court include a disclaimer that the Court neither encourages or discourages participation in the case and that the title of the reminder notice be changed (Dkt. No. 33, at 29). The Court overrules Southwestern's objection on this point and denies its request.

        **D.**    **Conclusion As To Conditional Certification And Notice**

For the reasons set forth above, the Court grants, in part, and denies, in part, Mr. Clark's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28). The Court conditionally certifies the following class: Field Operators who worked in West Virginia, in the three-year period preceding the filing of the complaint.

For the reasons explained in this Order, the Court does not approve plaintiffs' proposed notice of right to join lawsuit or consent to join collective action as proposed and orders plaintiffs to file an amended proposed notice that cures the deficiencies identified above within seven days from the entry of this Order. The Court orders Southwestern to provide Mr. Clark's counsel with a list, in electronic importable format, such as Microsoft Word or Excel, of the names, including any aliases or alternative names, last known mailing addresses, and all known e-mail addresses, including personal and company-sponsored, for the potential opt-in plaintiffs no later than 30 days from the entry of this Order. After receiving such information and receiving final approval from the Court of the amended proposed notice that cures the deficiencies identified above, plaintiffs' counsel shall then have 90 days to distribute notice and file consent-to-join forms with the Clerk of Court.

### III.     Flywheel's Motion for Summary Judgment

On May 11, 2021, Flywheel filed a motion for summary judgment (Dkt. No. 38). Flywheel moves for summary judgment on Mr. Clark's successor-liability claims (*Id.*). Flywheel contends that because separate defendant Southwestern did not notify Flywheel or its affiliates of Mr. Clark's claims, because Southwestern remains capable of satisfying its own liabilities, and because there is no substantial continuity between Southwestern and Flywheel or its affiliates, no reasonable fact-finder could find that Flywheel is Southwestern's successor (Dkt. Nos. 38–40).

In his response to Flywheel's motion for summary judgment, Mr. Clark concedes that Flywheel should be dismissed from this case without prejudice (Dkt. No. 41). Therefore, the Court hereby grants Flywheel's motion for summary judgment and dismisses Flywheel without prejudice as a defendant (Dkt. No. 38).

## IV. Conclusion

It is therefore ordered that:

1. The Court grants, in part, and denies, in part, Mr. Clark's motion for conditional certification, for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 28).

2. The Court grants Flywheel's motion for summary judgment (Dkt. No. 38). Mr. Clark's claims against Flywheel are dismissed without prejudice.

It is so ordered this 31st day of March, 2022.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge