IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THOMAS CLARK, individually and
on behalf of all others similarly situated                                      PLAINTIFF

v.                                          Case No. 4:20-cv-00475-KGB

SOUTHWESTERN ENERGY
COMPANY                                                                          DEFENDANT

## ORDER

Plaintiff Thomas Clark, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), filed this action asserting claims under the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated § 11-4-201, *et seq*. (Dkt. No. 1, ¶ 1).  Plaintiffs subsequently voluntarily dismissed the AMWA claims (Dkt. No. 10, ¶ 1).  Before the Court is the parties' joint motion for approval of liability settlement (Dkt. No. 77), along with an attached copy of the proposed settlement agreement and release (Dkt. No. 77-1), and Plaintiffs' motion for costs and attorneys' fees (Dkt. No. 74).  The Court will address the joint motion for approval of liability settlement (Dkt. No. 77) and then Plaintiffs' motion for costs and attorneys' fees (Dkt. No. 74).

### I.      Joint Motion For Approval Of Liability Settlement

Settlement agreements resolving FLSA claims are typically subject to court approval.  *See Younger v. Ctrs. for Youth & Families, Inc.*, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017); 29 U.S.C. § 216(b).  Before approving a settlement, the Court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute.  *See id.*; *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The Eighth Circuit Court of Appeals has not directly addressed the factors to be considered in deciding motions for approval of FLSA settlements. However, other courts have scrutinized such settlements for fairness in two steps:

> First, the court should consider whether the compromise is fair and reasonable to the employee (factors 'internal' to the compromise). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (factors 'external' to the compromise). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *see also Anthony v. Concrete Supply Co.*, Case No. 3:16-cv-70-TCB, 2017 WL 5639933, at *1 (N.D. Ga. August 23, 2017) (applying the *Dees* approach).

FLSA actions may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Mr. Clark submitted a consent to join collective action form to the Court along with the original complaint (Dkt. No. 1, at 14). The record contains consent to join collective action forms for 16 other people, including Thomas Mills (Dkt. No. 48), Denzil F. (Denzil) Pratt (Dkt. No. 49, at 1), Robert T. (Todd) Starkey (*Id.*, at 2), Jeffrey L. (Jeff) Fisher (Dkt. No. 50, at 1), David I (Dave) Long (*Id.*, at 2), Benjamin (Ben) Newhouse (*Id.*, at 3), William A. (William) Rowan (*Id.*, at 2), James P. (James) Frazier (Dkt. No. 51), Robby W. (Robby) Buffington (Dkt. No. 52, at 1), Earl W. (Earl) Karickhoff (*Id.*, at 2), Robert S. (Shane) Beckett (Dkt. No. 53), Philip A. (Phil) Farris (Dkt. No. 54, at 1), Ronald L. (Lee) Galentine (*Id.*, at 2), Stephen (Stephen) Scott (*Id.*, at 3), Kenna E. (Kenna) Ulderich (*Id.*, at 4), and David M. (David) Cutright (Dkt. No. 55). In each of the 17

consent forms, the consenting individual agreed "to be bound by any settlement of this action or adjudication by the Court." (Dkt. Nos. 1, at 14; 48–55).

The settlement agreement and release states that it applies to Mr. Clark, the "Named Plaintiff," and the "Opt-In Plaintiffs," who shall be known collectively as "Plaintiffs" (Dkt. No. 77-1, ¶ 1).  The joint motion for approval of liability settlement states that after an opt-in period, "11 individuals who returned a Consent to Join form, including Named Plaintiff, are now taking part in the settlement." (Dkt. No. 77, ¶ 5).  Neither the joint motion for approval of liability settlement nor the settlement agreement and release explicitly identify the opt-in plaintiffs (*Id.*; Dkt. No. 77-1).  The settlement agreement and release states that funds shall be paid "to Plaintiffs . . . as set forth in Appendix A to this Agreement." (*Id.*, ¶ 4(a)).  Appendix A to the settlement agreement and release contains settlement shares or a service award for 11 total individuals:  Shane Beckett, Robby Buffington, Thomas Clark, David Cutright, Jeff Fisher, James Frazier, Lee Galentine, Dave Long, Tom Mills,[1] Ben Newhouse, and Stephen Scott (*Id.*, at 6).  The settlement agreement and release and Appendix A do not mention or provide settlement funds for Denzil F. Pratt, Robert T. Starkey, William A. Rowan, Earl W. Karickhoff, Philip A. Farris, and Kenna E. Ulderich (*Id.*).  Therefore, based on the record, the Court understands that "Plaintiffs" bound by the settlement agreement and release include only the "Named Plaintiff," defined as Thomas Clark, and the "Opt-In Plaintiffs," defined as Shane Beckett, Robby Buffington, David Cutright, Jeff Fisher, James Frazier, Lee Galentine, Dave Long, Tom Mills, Ben Newhouse, and Stephen Scott. If the Court's understanding of the parties' agreement is incorrect, the parties should seek clarification from the Court of this Order.

---

[1]  The Court assumes that this is the same person as Thomas Mills, who submitted the consent to join collective action form that appears in the record at Docket Number 48, though Mr. Mills did not provide "Tom" as a preferred name on the form.

At the request of the parties, having reviewed the settlement agreement and release signed by Mr. Clark and Chris Lacy as Senior Vice President General Counsel and Corporate Secretary of Southwestern Energy Company, the Court determines that the settlement agreement and release both provides Plaintiffs a reasonable recovery and furthers the implementation of the FLSA in the workplace. Therefore, the Court grants the joint motion for approval of liability settlement and approves the settlement agreement and release (Dkt. Nos. 77; 77-1).

## II.      Plaintiffs' Motion For Costs And Attorneys' Fees

Despite their efforts to do so, the parties failed to negotiate costs and attorneys' fees. As a result, Plaintiffs filed a motion requesting an award of costs and attorneys' fees (Dkt. No. 74). Southwestern Energy Company ("Southwestern") responded in opposition to the motion (Dkt. No. 78). Plaintiffs filed a reply (Dkt. No. 79).

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Determining a reasonable award of attorneys' fees is a two-step process. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). The party seeking an award of fees should "submit adequate documentation supporting the number of hours claimed," and the court "may deduct hours from this initial number

if counsel's documentation is inadequate." *Gay v. Saline Cty.*, Case No. 4:03-cv-00564 HLJ, 2006 WL 3392443, at *2 (E.D. Ark. Oct. 20, 2006) (citing *Hensley*, 461 U.S. at 433). Once calculated, the lodestar amount is presumptively reasonable, *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), but may be adjusted upward or downward, as the court finds necessary based on the facts and circumstances of the particular case, *see Hensley*, 461 U.S. 434. "Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion." *Hanig*, 415 F.3d at 825 (citing *Harmon v. City of Kansas City*, 197 F.3d 321, 329 (8th Cir. 1999)).

Plaintiffs seek a fee award of $27,623.75 and costs in the amount of $716.30 (Dkt. No. 74, at 2). Their motion is supported by a billing spreadsheet, a declaration from Plaintiffs' lead counsel, and a costs invoice (Dkt. Nos. 74-1; 74-2; 74-3).

Southwestern opposes the request and asserts that any award of fees and costs should be reduced to $10,000.00 (Dkt. No. 78, at 2). In support of their response, Southwestern argues that "a significant portion" of Plaintiffs' requested fees relate to unsuccessful claims against, and motion practice with, Flywheel, a former defendant Plaintiffs agreed to dismiss. Southwestern maintains that fees attributable to work done in regard to Flywheel total $6,370.50 (*Id.*, at 3). Next, Southwestern asserts that any fee award should be reduced by $2,860.70 which is the amount spent to amend the complaint to remove "the unsuccessful Arkansas Minimum Wage Act claim" that did not apply to Plaintiffs' employment and was time-barred at the time of filing, according to Southwestern (*Id.*, at 3–4). Southwestern challenges as excessive the hourly rates billed by timekeepers for Plaintiffs, the case management and in-house conferences, and the fee petition preparation (*Id.*, at 4–7). Southwestern also maintains that Plaintiffs may not seek the $100.00 in costs for a service fee, as such fees are not recoverable under 28 U.S.C. § 1920 (*Id.*, at 7).

In reply, Plaintiffs find fault with the overall positions taken by Southwestern but grant some concessions.  Plaintiffs, "in a show of good faith," are willing to reduce fees spent on Flywheel billing entries by $4,459.35, which Plaintiffs represent is 70% of the reduction requested by Southwestern (Dkt. No. 79, at 3–4), and are willing to reduce AMWA billing entries by $2,002.49, which Plaintiffs represent is 70% of the reduction requested by Southwestern (*Id.*, at 4).  Plaintiffs also maintain that billing rates and entries are reasonable and that costs for a service fee should be awarded.

Considering the parties' filings, exhibits, and arguments, the Court reduces Plaintiffs' requested fees by 40%, awarding Plaintiffs $16,574.25 in fees, and reduces by $100.00 the costs Plaintiffs request, awarding Plaintiffs $616.30 in costs.

## III.    Conclusion

For the foregoing reasons, the Court grants the joint motion for approval of liability settlement (Dkt. No. 77) and grants, in part, Plaintiffs' motion for costs and attorneys' fees, awarding $16,574.25 in fees and $616.30 in costs (Dkt. No. 74).

It is so ordered, this the 27th day of March, 2024.

Kristine G. Baker
Chief United States District Judge